IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARGARET MCCLAIN HARE, Individually, and as
Personal Representative of the Estate of
FRANCIS X. MCCLAIN, Deceased

        Plaintiff,

v.                                          No. 2:14-CV-01003-JB/CG

BOARD OF COUNTY COMMISSIONERS
OF LEA COUNTY, A POLITICAL SUBDIVISION
OF THE STATE OF NEW MEXICO, LEA COUNTY
SHERIFF'S DEPARTMENT, A POLITICAL
SUBDIVISION OF THE STATE OF NEW MEXICO,
DEPUTY REX FLEETWOOD IN HIS PERSONAL
CAPACITY AS A DEPUTY OF LEA COUNTY, AND
MARK HARGROVE, UNDERSHERIFF,
IN HIS PERSONAL AND OFFICIAL CAPACITY,

        Defendants,

                                           and consolidated with

DORA PANDO, AS PERSONAL
REPRESENTATIVE FOR LEON SANCHEZ,

        Plaintiff,

v.                                          No. 2:14-CV-01017

LEA COUNTY SHERIFF'S DEPARTMENT,
MARK HARGROVE, IN HIS PERSONAL AND
OFFICIAL CAPACITY AS UNDERSHERIFF OF
LEA COUNTY, AND REX FLEETWOOD, IN HIS
PERSONAL AND OFFICIAL CAPACITY AS A
DEPUTY OF LEA COUNTY,

        Defendants.

### FIRST AMENDED COMPLAINT FOR DAMAGES

**COMES NOW** Dora Pando, as Personal Representative for the Estate of Leon Sanchez by and through its attorneys Heidel, Samberson, Newell, Cox & McMahon, and in support for its

1

claims for damages states:

## JURISDICTIONAL ALLEGATIONS AND PARTIES

1. This action is brought pursuant to 42 USC Sections 1983 and 1988, the Fourth Amendment and Fourteenth Amendment to the United States Constitution, Article II Section Four of the New Mexico Constitution and New Mexico state common law.

2. This Court has jurisdiction over this matter under 42 USC Section 1983, 28 USC Section 1343 and 28 USC Section 1331.

3. Plaintiff is the personal representative of the Estate of Leon Sanchez, who was a citizen and resident of Lea County, New Mexico. Plaintiff is a resident of Lea County, New Mexico.

4. Defendant Lea County Sheriff's Department ("LCSD") is a subdivision of Lea County, a New Mexico county duly created under the laws of the State of New Mexico.

5. Defendant Mark Hargrove was at all times material hereto the Undersheriff of Lea County and as such was a full time, salaried, duly certified law enforcement officer with the LCSD. All his actions relevant to this cause of action were conducted under the color of law.

6. Defendant Rex Fleetwood was at all times material hereto a deputy with the LCSD and was a full time, salaried, duly certified law enforcement officer with the LCSD. All his actions relevant to this cause of action were conducted under the color of law.

7. Defendant Mark Hargrove and Defendant Rex Fleetwood are sued in their individual capacities as well as in their official capacities as law enforcement officers of a local political body.

## STATEMENT OF FACTS

8. Leon Sanchez was a business owner in Lea County, New Mexico. He owned a hair salon in Lovington and was well known within the community. He was known to be homosexual.

9. Sanchez lived just outside the city limits of Lovington in an urban interface area patrolled by the Lea County Sheriff's Department. He resided at 1408 East Seely Road, Lovington, New Mexico, less than five miles from the main office of the LCSD.

10. Sanchez contracted with ADT to provide a security system for his home at 1408 East Seely Road, Lovington, New Mexico, to protect himself from burglaries and home invasions. He believed the presence of an alarm system would ensure a prompt response by the LCSD in the event he was a victim of either a burglary or a home invasion.

11. On November 9, 2011, while Sanchez and friend, Francis McClain, were at the Sanchez residence, the ADT alarm system activated to a possible unauthorized entry.

12. The ADT alarm system activated at 14:05:34 hours and repeatedly activated thereafter. ADT unsuccessfully attempted to contact Sanchez. The alarm continued to signal an unauthorized entry into the Sanchez home. The repeated activation indicated an ongoing situation.

13. ADT contacted the Lea County Communication Authority dispatch which directs the information to the Defendant LCSD, at 14:07:06 hours.

14. At precisely 14:07:06, when contacted by ADT, the LCSD was put on notice and had reason to believe there was a crime in progress just outside the city limits of Lovington.

15. On November 9, 2011, Defendant Hargrove was on duty as undersheriff supervising the operations of the LCSD. Defendant Fleetwood was on patrol in and around the area of Tatum, New Mexico approximately 20 miles from the Sanchez home in unit L39.

16. The LCSD dispatched Defendant Rex Fleetwood at 14:07:56 to the Sanchez residence as a priority one dispatch for a possible home invasion and burglary. No other units were dispatched.

17. LCSD's Policies dictated Defendant Fleetwood be dispatched even though other deputies, or even the Lovington Police Department, would have made a more prompt and timely response to the residence of Leon Sanchez.

18. During this time Defendant Hargrove would or should have become aware of the fact the deputy dispatched to a potential ongoing crime scene was approximately twenty miles away in Tatum, New Mexico.

19. Leon Sanchez lived next door to his brother, Albert Sanchez, had a video security system at his home which also showed the front portion of Leon Sanchez's property.

20. According to the video security system, third parties abducted Leon Sanchez and Francis McClain from the Sanchez residence at 14:20:50, approximately sixteen minutes after the LCSD was contacted by ADT and thirteen minutes after Defendant Fleetwood was dispatched.

21. Defendant Fleetwood chose a slower route to the decedent's residence, although there were more efficient routes available. As a result his arrival at the residence of Leon Sanchez was even more delayed.

4

22. At 14:22:17, just two minutes after the decedents were abducted; Defendant Fleetwood arrived at the wrong residence.

23. According to his report, Defendant Fleetwood arrived at the Sanchez residence at approximately 14:29, over twenty minutes after the LCSD was alerted by ADT to a crime in progress. Defendant Fleetwood was the first officer on the scene.

24. Upon arrival Defendant Fleetwood found the front gate to 1408 East Seely open.

25. Defendant Fleetwood entered the property and approached the residence where he found the door to the Sanchez residence also open and dogs barking inside. Defendant Fleetwood then requested a second deputy be dispatched.

26. While awaiting outside the Sanchez residence for the backup deputy to arrive, Defendant Fleetwood made contact with Albert Sanchez. Albert Sanchez advised the dogs would not bite or run away.

27. Defendant Fleetwood then knocked and entered the Sanchez residence. By 14:51:14, Defendant Fleetwood had cleared the house. He ignored evidence inside where there was evidence of two half eaten meals, Sanchez's phone on the floor, and other evidence that suggested a possible abduction.

28. Defendant Fleetwood, consistent with his training or lack thereof, cleared the call without incident to LCSD and without an adequate and thorough investigation ignoring the evidence of abduction. Defendant Fleetwood completed his investigation of the residence by 15:04:08, less than 40 minutes after his arrival.

29. After exiting the residence, Defendant Fleetwood failed to adequately investigate the area surrounding the residence, despite the volume of evidence supporting an abduction.

Defendant Fleetwood exited the front gate of the residence at 15:04:08 and returned to his vehicle at 15:07:01.

30. Defendant Fleetwood engaged in no effort to obtain evidence, as he had not been trained to do so.

31. Defendant Fleetwood failed to alert anyone to the possibility that Leon Sanchez and Francis McClain had been abducted, because was not properly trained to attempt to make contact with the home owner to ensure his or her safety.

32. Defendant Fleetwood took no steps to ascertain the whereabouts or safety of the occupants of the residence. No all points bulletin or other alert was issued for the possible abduction of Leon Sanchez or Francis McClain.

33. Subsequent to their abduction on November 9, 2011, Leon Sanchez along with Francis McClain were savagely beaten and murdered, only a few miles from the Sanchez residence.

34. These murders would have been prevented, but for the lack of effective policies and failures to properly train which resulted in an inadequate law enforcement response to the emergency calls from ADT.

## ALLEGATIONS REGARDING POLICIES

35. The general duties of a law enforcement officer with the LCSD include responding to crimes in progress, such as burglaries and home invasions. Duties also include investigating such crimes. The enforcement officers with the LCSD are trained in accordance with the policies and procedures of the LCSD.

36. The LCSD has policies which have been developed and implemented by Defendant

Hargrove and other supervising personnel.

37. Lea County, New Mexico has seen a steady and usual amount of burglaries which have increased over thirty percent between 2004 and 2013 according to crime statistics reported by the LCSD.

38. The burglary rate in Lea County is over 50% higher than the nationwide average.

39. Responding to burglaries and home invasion crimes constitute a usual and recurring situation with which police officers must deal.

40. The LCSD and Hargrove trained and assigned law enforcement officers knowing that responding to crimes in progress, including burglaries and home invasions, were a foreseeable and usual function of a county law enforcement agency. They also knew in responding to crimes in progress, time of response is of critical importance.

41. According to crime and policy statistics, the LCSD has a crime clearance rate of 2.81%, compared to a nationwide average of 28.23%. More specifically LCSD has a burglary clearance rate of 1.19%, which falls far below the nationwide average burglary clearance rate.

42. The training, deployment, and policies developed by LCSD and Hargrove concerning properly responding to crimes in progress, such as burglaries and home invasions, and properly investigating these crimes have been inadequate as reflected by the aforementioned statistics.

43. The LCSD and Hargrove knew or should have known a burglary clearance rate of 1.19% encouraged rather than deterred such crimes, yet between 2004 and November 9, 2011, nothing was done to improve the training or deployment of law enforcement officers by

the LCSD to address these deficiencies.

44. The New Mexico County Insurance Authority ("NMCIA") provides a "Sheriff's Department Standard Operating Procedures Manual" which contains a more comprehensive policy regarding how to respond to and investigate crimes, such as burglaries and home invasions, including procedures when the crime is in progress.

45. These model policies were available to Defendant Hargrove and the LCSD.

46. The LCSD and Defendant Hargrove deliberately chose to continue implementing and training deputies based on an ineffective policy, despite having a potentially more effective policy easily and readily available to them.

47. The LCSD had knowledge that its training, deployment, and policies were ineffective and placed residents of the county at risk to crimes in progress, such as burglaries. The LCSD and Defendant Hargrove were deliberately indifferent to the lack of efficiency in the policies and training of its deputies and because of that the decedents Leon Sanchez and Francis McClain failed to have a prompt and appropriate response to the notification of a crime in progress at the Sanchez residence.

48. The indifference of the LCSD and Defendant Hargrove to the home invasion and burglary problem resulted in a failure to adequately train and properly deploy officers, including Defendant Fleetwood on November 9, 2011. As a result, Defendant Fleetwood and the LCSD failed to respond in a timely manner to prevent the abduction of Leon Sanchez and Francis McClain.

49. Defendant Fleetwood's need for more or different training was so obvious and inadequate that it resulted in a violation of the rights of Leon Sanchez and Francis McClain to due

process under the Fourteenth Amendment of the Constitution.

50. There is a direct causal link between Defendant Fleetwood's inadequate training and the constitutional deprivation of Leon Sanchez. The LCSD and Defendant Hargrove's inadequate training led to Defendant Fleetwood's failure to promptly and properly respond and investigate, which subsequently led to the abduction and murder of Leon Sanchez and Francis McClain.

**FIRST CAUSE OF ACTION**
**COUNT 1- WRONGFUL DEATH ARISING FROM**
**FAILURE TO PROTECT- REX FLEETWOOD**

51. Plaintiff reaffirms and realleges the allegations set forth in paragraphs one through thirty-six the same as if each were fully set forth herein.

52. Defendant Fleetwood failed to respond to the residence of Leon Sanchez in a timely manner after being dispatched by LCSD following the call from ADT.

53. Fleetwood knew or should have known this was likely an ongoing crime and of the danger of a home invasion and burglary.

54. Defendant Fleetwood increased Sanchez's vulnerability to danger by failing to respond in an urgent manner and by deliberately ignoring the evidence of possible abduction upon arrival at the scene.

55. Leon Sanchez and Francis McClain were members of a limited and specifically definable group whose rights were violated by Defendant Fleetwood's actions and omissions.

56. Defendant Fleetwood's conduct, namely the lack of prompt and proper response to the priority one dispatch, put Leon Sanchez and Francis McClain at substantial risk of serious, immediate, and proximate harm, and they were in fact harmed. Leon Sanchez

and Francis McClain were abducted from Sanchez's home and murdered.

57. The substantial risk was or should have been obvious and known to Defendant Fleetwood upon entering the scene.

58. Defendant Fleetwood acted deliberately and recklessly in conscious disregard of the risk when he left the scene, and as a result Leon Sanchez and Francis McClain suffered.

59. Defendant Fleetwood had a duty to suppress assaults and batteries and be a conservator of the peace pursuant to NMSA § 4-41-2 and § 4-41-9. By failing to promptly respond to the residence of Leon Sanchez and by clearing the call while ignoring evidence of abduction Defendant Fleetwood failed to discharge his duty as a deputy sheriff causing the death of Leon Sanchez and Francis McClain.

60. In refusing to promptly respond and investigate the call to the residence of Leon Sanchez, Defendant Fleetwood failed to properly perform his statutory duties as a law enforcement officer.

61. By ignoring open and obvious evidence and by failing to report a possible kidnaping and abduction of Leon Sanchez and Francis McClain, Defendant Fleetwood deliberately disregarded the rights of Leon Sanchez and Francis McClain to reasonable law enforcement protection.

62. These actions constitute a deprivation of the civil rights of Leon Sanchez and Francis McClain.

63. The Estate of Leon Sanchez suffered damages and should be awarded compensatory damages and punitive damages to the extent allowed by law.

64. The Estate of Leon Sanchez is entitled to recover attorney's fees incurred herein.

## SECOND CAUSE OF ACTION
## COUNT 2- FAILURE TO PROTECT, FAILURE TO TRAIN- MARK HARGROVE

65. Plaintiff reaffirms and realleges the allegations set forth in paragraphs one through forty-five the same as if each were fully set forth herein.

66. Defendant Hargrove has a duty to suppress assaults and batteries and to keep the peace pursuant to NMSA § 4-41-2. As an appointed undersheriff, he was required to fulfill such duties under NMSA § 4-41-5.

67. Defendant Hargrove had a duty as undersheriff to ensure there was an appropriate and prompt response to the ADT report of a possible burglary or home invasion. Hargrove failed to properly train and deploy deputies including Defendant Fleetwood in such a manner so as to properly respond to the dispatch to the residence of Leon Sanchez and once there to recognize evidence of a crime.

68. Defendant Hargrove as undersheriff at the LCSD had duties and responsibilities relating to training and deployment of law enforcement officers.

69. Defendant Hargrove increased Sanchez's vulnerability to danger by deliberately ignoring the ineffectiveness of his implemented policies and failing to adequately train his deputies.

70. Defendant Hargrove failed to provide proper training on responding to and investigating crimes, such as burglaries and home invasions.

71. Sanchez was a member of a limited and specifically definable group whose rights were violated by Hargrove's deliberate indifference to ineffective policies and inadequate deputies.

72. Defendant Hargrove failed to deploy deputies to properly respond and investigate the priority one call received from ADT for the residence of Leon Sanchez, so that it took in excess of almost twenty minutes to respond to a location less than five minutes from the LCSD office.

73. Defendant Hargrove's conduct put Leon Sanchez and Francis McClain at substantial risk of serious, immediate, and proximate harm, and they were in fact harmed. Leon Sanchez and Francis McClain were abducted from Sanchez's home and murdered.

74. The substantial risk was or should have been obvious and known to Defendant Hargrove due to his knowledge that the response time to a burglary or home invasion type crime is critical to protecting the public and clearing the crime.

75. Defendant Hargrove acted deliberately and recklessly in conscious disregard of the risk by continuing to utilize ineffective policies and inadequate deployment of his deputies, and as a result Leon Sanchez and Francis McClain suffered.

76. Additionally, Defendant Hargrove failed to properly train Fleetwood to promptly respond and investigate the residence of Sanchez which resulted in Fleetwood failing to report the abduction of Leon Sanchez and Francis McClain.

77. The actions of Hargrove deliberately disregarded the rights of Leon Sanchez.

78. As a result of the actions of Hargrove, Leon Sanchez was deprived of his civil rights.

79. The Estate of Leon Sanchez suffered damages and should be awarded compensatory damages and punitive damages to the extent allowed by law.

80. The Estate of Leon Sanchez is entitled to recover attorney's fees incurred herein.

## COUNT III- FAILURE TO TRAIN- LEA COUNTY

## SHERIFF'S DEPARTMENT

81. Plaintiff reaffirms and realleges the allegations set forth in paragraphs one through fifty-five the same as if each were fully set forth herein.

82. LCSD had a duty to have and maintain proper policies and training to meet the obligations and duties of the office of sheriff set forth in NMSA § 4-41-2.

83. The LCSD failed to maintain such policies so as to insure that a level one burglary/home invasion in process call would be subject to a prompt response by the deputies employed by the department.

84. The LCSD increased Sanchez's vulnerability to danger by deliberately ignoring the ineffectiveness of the implemented policies and failing to appoint an undersheriff motivated to adequately train deputies.

85. Sanchez was a member of a limited and specifically definable group whose rights were violated by LCSD's deliberate indifference to appointing an undersheriff who utilized effective policies and adequately trained deputies.

86. The LCSD's conduct put Sanchez at substantial risk of serious, immediate, and proximate harm, and he was in fact harmed. Sanchez was abducted from his home and murdered.

87. The substantial risk was or should have been obvious and known to LCSD due to their knowledge of their department's extremely low clearance rate.

88. The LCSD acted deliberately and recklessly in conscious disregard of the risk by failing to continually evaluate the effectiveness of the policy being implemented and failing to appoint an undersheriff who would utilize an effective policy and adequately train his deputies, and as a result Sanchez suffered.

89. Appropriate policies and proper training and deployment would allow for a response time of less than thirteen minutes for a priority one call which occurs less than five minutes away from the main sheriff's office.

90. The lack of proper training and deployment along with the failure to have and maintain proper policies regarding responding to calls such as that received from ADT regarding the alarm at the residence of Leon Sanchez reflects a deliberate disregard of the rights of Leon Sanchez and others.

91. As a result of the actions of the LCSD the civil rights of Leon Sanchez were violated.

92. The Estate of Leon Sanchez suffered damages and should be awarded compensatory damages and punitive damages to the extent allowed by law.

93. The Estate of Leon Sanchez is entitled to recover attorney's fees incurred herein.

**WHEREFORE,** Plaintiff prays this Court award the Estate of Leon Sanchez damages including compensation damages, punitive damages, attorney's fees, costs incurred, and for such other and further relief as may be deemed equitable and just.

Respectfully Submitted,

HEIDEL, SAMBERSON, NEWELL, COX & MCMAHON
Post Office Drawer 1599
Lovington, New Mexico 88260
(575) 396-5803

By: _____
Michael Newell
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing pleading was served via the Court's CM/ECF system on this 22nd day of June, 2014 to the following:

Max Proctor, Esq.
728 West Silver
Hobbs, NM 88240

Amy Glasser, Esq.
Potts and Assoc.
6001 Indian School Rd. NE #100
Albuquerque, NM 87110

_/s/ Michael Newell_
Michael Newell